# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
(Filed:  October 2, 2019)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| THERESA DEISHER, as Administrator of | * | |
| the Estate of H.S., a Minor, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 17-294 |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Reasonable |
| AND HUMAN SERVICES, | * | Basis; Percentage Reduction in Fees; |
| | * | Expert Fees. |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

John F. McHugh, Law Office of John McHugh, New York, NY, for petitioner.
Heather L. Pearlman, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On March 2, 2017, Theresa Deisher ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program[2] on behalf of the estate of her deceased son, H.S.  Petitioner alleged that "vaccinations this child received between 2002 and 2005 caused onset of lethal cancer."  Petition at ¶ 2.  On April 1, 2019, the undersigned issued a decision determining that petitioner was not entitled to compensation and dismissing the petition.  Decision dated Apr. 1, 2019 (ECF No. 62).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act").

1

On May 15, 2019, petitioner filed a motion for attorneys' fees and costs.[3] Petitioner's Motion ("Pet. Mot.") dated May 15, 2019 (ECF No. 65). Petitioner requested $60,029.68 in fees and $23,743.81 in costs, for a total request of $83,773.49. Id. Respondent filed a response on May 28, 2019, opposing petitioner's motion on the grounds that the claim lacked a reasonable basis. Respondent's ("Resp.") Response dated May 28, 2019 (ECF No. 67). Respondent emphasized that none of H.S.'s treating physicians had connected his Burkitt lymphoma to his vaccines, and that petitioner's expert reports were "patently insufficient to demonstrate a reasonable basis for the claim." Id. at 7. In her reply, petitioner maintained that her experts possessed the qualifications necessary to opine in this matter, and she recounted the scientific evidence which, she asserted, supported her theory of causation. Pet. Reply dated June 10, 2019 (ECF No. 69); see also Pet. Mot. at 1-7.

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned GRANTS petitioner's motion in part and awards $61,108.67 in attorneys' fees and costs.

I.   Discussion[4]

   A.   **Reasonable Basis**

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. Here, respondent does not appear to challenge petitioner's good faith. Instead, respondent asserts that petitioner's claim had no objectively reasonable evidentiary basis.

"Special masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012). In the interest of preserving this discretion, courts have declined to impose "a reasonable basis test that turns solely on evidentiary standards." Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 287 (2014). Instead, it has been described simply as "an objective inquiry unrelated to counsel's conduct." Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 636 (Fed. Cir. 2017). While incomplete medical records do not prohibit a finding of reasonable basis, Chuisano, 116 Fed. Cl. at 288, the Vaccine Act contemplates "a simple review of available medical records to satisfy the attorneys that the claim is feasible" prior to filing. Silva, 108 Fed. Cl. at 405.

---

[3] At the undersigned's request, petitioner later filed a supplement to this motion, documenting his expenses. Pet. Supplement ("Suppl.") dated May 29, 2019 (ECF No. 68).

[4] A detailed factual summary and procedural history are provided in the undersigned's decision dismissing the case and will not be recounted here. See Decision at 2-6.

Here, the undersigned determines that petitioner had sufficient reasonable basis to file the claim. "[I]n a field bereft of complete and direct proof of how vaccines affect the human body," petitioners will inevitably be compelled to explore novel theories "hitherto unproven in medicine." See Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274 (Fed. Cir. 2005); see also Browning v. Sec'y of Health & Human Servs., No. 02-929V, 2010 U.S. Claims LEXIS 761, at *3 (Fed. Cl. Spec. Mstr. Sept. 27, 2010) (contemplating "the extent to which a claimant alleging a 'novel' theory of vaccine injury may be permitted to incur fees and costs in an unsuccessful quest for supporting medical evidence," and ultimately awarding approximately 75% of the requested attorneys' fees and costs). Petitioner asserts just such a novel theory here – indeed, the undersigned is aware of no Vaccine Program decisions either compensating or rejecting claims related to Burkitt lymphoma. The undersigned has incorporated the novelty of this theory into her reasonable basis analysis, as contemplated in Amankwaa v. Sec'y of Health & Human Servs. See 138 Fed. Cl. 282 (2018).

In Amankwaa, the Court of Federal Claims described "a number of objective factors" unrelated to counsel's conduct that may guide special masters' reasonable basis analysis – specifically, "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." 138 Fed. Cl. at 289. Here, "the novelty of the theory of causation" in particular gives important context to the reasonable basis inquiry. Under these circumstances, the undersigned would not necessarily expect petitioner to offer a wealth of medical literature, or past Vaccine Program cases compensating the same injury. Petitioner provided medical records that establish the claimed vaccines and the claimed injury, along with scientific support – two expert reports bolstered by medical literature. See Pet. Exs. 12, 25. Moreover, the transcript of the Food and Drug Administration's conference on "Evolving Scientific and Regulatory Perspectives on Cell Substrates for Vaccine Development," filed by petitioner, does suggest concern in the scientific community at one time regarding the "tumorigenic potential" of the continuous cell lines used in vaccine production. Pet. Ex. 30-16 at 35. This quantum of objective proof is not sufficient to establish entitlement, but does satisfy the requirements of reasonable basis. See Chuisano, 116 Fed. Cl. at 286 (noting that the reasonable basis burden "is something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim"); see also Newport v. Sec'y of Health & Human Servs., No. 17-1897V, 2019 WL 1958682 (Fed. Cl. Spec. Mstr. Mar. 12, 2019) (finding reasonable basis where medical records established the vaccine and the injury, even though no expert report was submitted). Therefore, the undersigned determines that this claim had reasonable basis during the time it was pending before this Court.

### B.     Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (2009). A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (2011).

### 1. Reasonable Hourly Rates

Petitioner requests the following hourly rates for the attorney and paralegal who worked on this matter:

**John F. McHugh (Attorney):** $415.00 for 2016-2017; $430.00 for 2018[5]

**Paralegal:** $125.00 for 2016-2018

The undersigned has awarded similar rates to Mr. McHugh and his paralegal in the past. See, e.g., Miles v. Sec'y of Health & Human Servs., No. 12-254V, 2018 U.S. Claims LEXIS 1258 (Fed. Cl. Spec. Mstr. Sept. 7, 2018); J.M. v. Sec'y of Health & Human Servs., No. 02-10V, 2018 U.S. Claims LEXIS 209 (Fed. Cl. Spec. Mstr. Feb. 13, 2018). Here, the undersigned again determines that these rates are reasonable and in accordance with the guidelines set forth in McCulloch v. Sec'y of Health & Human Servs., No. 09-293, 2015 WL 563423 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

### 2. Reduction of Billable Hours

While the undersigned has determined that petitioner is entitled to an award of attorneys' fees and costs, she finds that a reduction in the number of hours billed by petitioner's counsel is appropriate.

Petitioner's counsel has extensive experience in the Vaccine Program. See Pet. Mot. at 5; J.M., 2018 U.S. Claims LEXIS 209, at *7 (noting that as of 2018, Mr. McHugh had "49 total

---

[5] While petitioner's billing records indicate a rate of $430.00 for Mr. McHugh in 2018, petitioner elsewhere states that Mr. McHugh's 2018 rate is $445.00. Compare Pet. Mot., Attachment ("Attach.") 1 at 7 with Pet. Mot. at 5. Because the requested fees for 2018 seem to have been calculated using a $430.00 hourly rate, and because the undersigned finds no reason to award a higher rate, the undersigned will consider $430.00 the requested rate.

years of litigation experience, 19 of which are in the Vaccine Program"). Even so, he has often litigated this case in a very inefficient manner. In 2018, for instance, the undersigned was compelled to issue two orders to show cause to address petitioner's unfiled medical literature and other deficiencies. See Order to Show Cause dated May 21, 2018 (ECF No. 37); Order to Show Cause dated June 21, 2018 (ECF No. 47). Other filings were, essentially, unresponsive. See Pet. Response dated June 18, 2018 (ECF No. 45); Resp. Response dated June 20, 2018 (ECF No. 46).[6] In short, "petitioner's inefficient prosecution of this case unnecessarily prolonged the ultimate resolution," resulting in the expenditure of excessive hours on all sides. See Hocraffer v. Sec'y of Health & Human Servs., No. 99-533V, 2011 WL 3705153, at *2 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for review denied, 2011 WL 6292218 (Fed. Cl. Nov. 22, 2011) (finding that the special master's reduction of fees due to counsel's "inefficient prosecution" was not arbitrary and capricious, an abuse of discretion, or contrary to law). The undersigned will thus reduce Mr. McHugh's requested fee by 20%[7] and award total attorneys' fees of $48,023.74.

### C. Reasonable Costs

#### 1. Expert Fees

##### a. Dr. Judy Mikovits, Ph.D., and Dr. Francis Ruscetti, Ph.D.

Petitioner requests $17,500.00 to compensate Dr. Mikovits and Dr. Ruscetti, who submitted an expert report jointly. Pet. Suppl. at 11. Together, they billed 50 hours at an hourly rate of $350.00. Id.

The expert reports and testimony offered by Dr. Mikovits and Dr. Ruscetti have received significant criticism in the Vaccine Program. In many instances, their reports have been "riddled with errors, exaggerations, and false statements." Dominguez v. Sec'y of Health & Human Servs., No. 12-378V, 2018 U.S. Claims LEXIS 724, at *15 (Fed. Cl. Spec. Mstr. May 25, 2019). Some special masters have also questioned Dr. Mikovits' credentials specifically, noting that "one of her research papers was severely criticized and subject to retraction from a scientific journal,"[8] Rogero v. Sec'y of Health & Human Servs., No. 11-770V, 2017 U.S. Claims LEXIS 1200, at *129 (Fed. Cl. Spec. Mstr. Sept. 1, 2017), and that she has not held a research position

---

[6] Respondent had requested that petitioner file "[r]esults of any and all tests that were conducted on H.S.'s tumor." Resp. Mot. dated March 9, 2018 (ECF No. 31). Petitioner instead maintained that "[r]espondent's experts seek samples of HS's tumors," a misinterpretation that consumed valuable time for both parties. See Pet. Response dated June 18, 2018 (ECF No. 45); Resp. Response dated June 20, 2018 (ECF No. 46).[6]

[7] The reduction is calculated as follows: $60,029.68 x 0.2 = $12,005.94.

[8] The retraction was spurred by "multiple other studies being unable to confirm the results (including studies performed by some of the original authors), evidence of poor quality control in some of the experiments, and evidence of manipulation or mislabeling of certain figures used in the studies." Dominguez, 2018 U.S. Claims LEXIS 724, at *12.

since 2012.  Dominguez, 2018 U.S. Claims LEXIS 724, at *13; Pet. Ex. 12-a.  She has also been "dismissive and conclusory in attempting to explain away the many embarrassing episodes from her professional life," some of which are simply "too damaging to ignore."  McKown v. Sec'y of Health & Human Servs., No. 15-1451V, 2019 WL 4072113, at *47 (Fed. Cl. Spec. Mstr. July 15, 2019).

The expert report submitted by Dr. Mikovits and Dr. Ruscetti in this matter displayed many of the same flaws the undersigned and her fellow special masters have observed in the past.  See Decision at 21-22.  Not only did the report misconstrue the filed medical literature, but the undersigned found it "generally speculative, difficult to follow, and outside the experts' area of expertise."  Id. at 21.  Therefore, as she has done for these experts in the past, the undersigned will reduce the requested fee by 50%.[9]  The undersigned thus awards $8,750.00 for the services of Dr. Mikovits and Dr. Ruscetti.

### b. Dr. Douglas Darnowski, Ph.D.

Petitioner requests $3,817.75 to compensate Dr. Darnowski, who submitted a responsive expert report.  Pet. Suppl. at 5.  Dr. Darnowski billed 21.25 hours at an hourly rate of $175.00.  Id.

"[A] physician providing expert testimony '[s]hould have recent and substantive experience or knowledge in the areas in which they testify."  Stone v. Sec'y of Health & Human Servs., No. 090-1041V, 2010 WL 3790297, at *8 (Fed. Cl. Spec. Mstr. Sept. 9, 2010) (quoting Am. Med. Ass'n Council on Ethical & Judicial Affairs, Code of Medical Ethics § 9.07 (2002-2003 ed.)).  Such is certainly not the case here.  In her decision, the undersigned thoroughly documented her concerns regarding Dr. Darnowski's credentials.  See Decision at 22.  Although petitioner argues that Dr. Darnowski's experience with molecular developmental biology, transgenic organisms, insertional mutagenesis, and genetic engineering gives him the knowledge required to opine in this case, the fact remains that he has no expertise in "cancer, vaccinations, or any other medical issues applicable to humans."  Id.; see also Pet. Mot. at 6-7.[10]  For these reasons, the undersigned will reduce the requested expert fee by 50%.[11]  The undersigned thus awards $1,908.87 for Dr. Darnowski's services.

---

[9] The reduction is calculated as follows: $17,500.00 x 0.5 = $8,750.00.

[10] Petitioner offers neither new information nor citations to Dr. Darnowski's CV to support his expertise in this area.  See Pet. Mot. at 6-7.

[11] The reduction is calculated as follows: $3,817.75 x. 0.5 = $1,908.88

### 2. Other Costs

Petitioner also requests $2,426.06 for miscellaneous costs, including medical literature, shipping costs, and medical records. See Pet. Mot., Attach. 2; Pet. Suppl. Because these costs are reasonable and well-documented, the undersigned will reimburse them in full.

## II. Conclusion

For the reasons discussed above, the undersigned finds that petitioner is entitled to the following award of reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorneys' fees requested: | $ 60,029.68 |
| Reduction: | $ (12,005.94) |
| **Attorneys' Fees Awarded** | **$ 48,023.74** |
| | |
| Attorneys' Costs Requested: | $ 23,743.81 |
| Reduction (Expert Fees): | $ (10,658.88) |
| **Attorneys' Costs Awarded** | **$ 13,084.93** |
| | |
| **Total Attorneys' Fees and Costs Awarded** | **$ 61,108.67** |

The undersigned hereby awards the amount of **$61,108.67**, in the form of a check made payable jointly to petitioner and petitioner's counsel, John McHugh.

The clerk of the court shall enter judgment in accordance herewith.[12]

**IT IS SO ORDERED.**

                                                   **s/Nora Beth Dorsey**
                                                   Nora Beth Dorsey
                                                   Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.